WILSON *v.* KELLY.

1. Where slaves were given to children by their father in his life-time, and he died intestate after emancipation, neither the value of such slaves nor their use can be charged as advancements under the statute of this state.
2. If the slaves were lent to the children, or were hired to the husbands of intestate's daughters, the use of the slaves in such cases could not be charged as advancements.
3. *Hughey* v. *Eichelberger*, 11 *S. C.*, 36, and *Ex parte Glenn*, 20 *Id.*, 64, affirmed.

Before HUDSON, J., Kershaw, February, 1883.

This was an action by Emily C. Wilson against Jane K. Kelly and others, distributees of the estate of Wiley Kelly, deceased, and against the administrator of said estate, for the settlement, partition, and distribution of the estate of said Wiley Kelly, who died in December, 1873. In making settlement and distribution of the personal estate among the distributees, an accounting for advancements became necessary, and in such accounting the question arose whether negro slaves received by

the several children of the intestate, before the war, were to be charged as advancements.

At June term, 1880, Judge Hudson held, under the authority of *Hughey* v. *Eichelberger*, that the slaves could not be charged for as advancements, but that the use of such slaves were advancements, and the master was directed to take an account of the value of such use. The master subsequently made a report of the value of such use to the children respectively. The cause came up again before Judge Hudson in February, 1883, on exceptions to the master's report, when his honor overruled the exceptions and confirmed the report.

From this decree some of the defendants appealed upon the ground "that his honor, the Circuit judge, erred in holding as matter of law and fact, that the hire of negroes, as reported by the master herein, should be charged against said defendants as advancements," and the plaintiff also gave notice of appeal from so much of the decretal order of June term, 1880, "as decides or determines that the value of the negro slaves given by Wiley Kelly, the intestate, to his children in his life-time and which were liberated before his death, cannot be charged as an advancement against said children."

*Messrs. J. D. Kennedy* and *W. H. R. Workman*, for plaintiff.

*Messrs. J. T. Hay* and *W. D. Trantham*, for defendants, appellants.

October 11, 1884. The opinion of the court was delivered by

MR. JUSTICE MCIVER. But two questions are raised by this appeal. 1st. Whether the value of the slaves given by the intestate, Wiley Kelly, who died in 1873, to certain of his children, shall be charged to such children as advancements. 2d. If not, whether the value of the services of such slaves should not be charged as advancements. It is true that some question has been raised as to whether any slaves were in fact given to the daughters of the intestate, the testimony tending to show that the intestate took notes for nominal sums from his sons-in-law for hire, but this seemed to be for the purpose of protecting the

slaves from the marital rights of the husbands, as the slaves all went into the possession of the parties prior to 1868. But for the purposes of this case we shall assume, as we understand the master to have found, that the slaves were really given to the daughters as well as to the sons. For if they were merely hired to the sons-in-law, there can be no question that neither their value, nor the value of their services, could be charged as advancements.

The first question has been decided adversely to the view contended for by the plaintiff by the case of *Hughey* v. *Eichelberger*, 11 *S. C.*, 36, which has been recognized and affirmed in the subsequent case of *Ex parte Glenn*, 20 *S. C.*, 64. This would ordinarily be conclusive of the question, but the counsel, probably not being aware of the subsequent decision in *Ex parte Glenn*, as it had not been published at the time the argument in this case was heard, contend that what was said in *Hughey* v. *Eichelberger* on the question was a mere *obiter dictum*, and have undertaken to show that such so-called *dictum* is not well founded, either in reason or authority. In that case there were *two* reasons given why the slaves could not be regarded as advancements. One was based upon the particular terms of the deed, and the other was that slaves having ceased to be property *before* the death of the intestate, it was impossible to ascertain their value under the rule established by the statute, as construed by the decisions in this state, and therefore it was impossible to charge them as advancements. We do not see why one of the reasons given should be regarded as *obiter dictum* any more than the other.

But waiving this, and waiving the further fact that the question has been distinctly decided in the subsequent case of *Ex parte Glenn*, we will proceed to consider the question. It is quite certain that property which has no value cannot be charged as an advancement, and it is equally certain that, at the death of the intestate in this case, slaves had no value. If, therefore, the rule prescribed by the statute, as construed by the decisions, is that the property claimed to be an advancement must be charged at the value which it bears *at the time of the death of the intestate*, relation being had to its condition at the time of the gift, and if slaves then had *no* value, it follows necessarily that there was

nothing to be charged as an advancement. It is contended, however, that such is not the rule, but that at the death of the intestate is the time when the inquiry is to be made as to what was the value of the property when it was given. To use the language of counsel in his argument: "The idea is that at the death is the time when an estimate is to be made of the value of the advances. Not that the value of the advances *at the death* is what the party receiving them is to be charged for then, but the estimate that shall be made at the death of what that value has been."

This, we think, is in direct conflict with the terms of the statute, and the construction given to it by the decisions. The language of the statute upon this point is: "The value of which portion being estimated at the death of the ancestor, but so as that neither the improvements of the real estate by such child or children, nor the increase of the personal property, shall be taken into the computation." This clearly shows that the intention was to charge the value of the property at the time of the death of the ancestor, discarding any increased value which may have been imparted to it by natural causes or by artificial improvements, and not that the estimate was then to be made of what had been the value; for if such was the intention, then there would have been no necessity for the provisions that the improvements and the natural increase should not be taken into consideration.

But the decisions leave this point in no doubt. In *McCaw v. Blewit*, 2 *McCord Ch.*, which is conceded to be a leading case on the point, the language of the court, at page 104, is as follows (italics being ours): "That part of the estate which has been given is to be estimated at *what it is worth at the death*, relation being had to its situation at the time of the gift. Thus a father gives one of his sons a healthy negro boy of twelve years of age, and ten years after the gift the father dies. If this boy be brought into *hotchpot*, his value will be estimated as that of a boy twelve years old; and whatever such a boy *would then bring*, the child is to be charged with as an advancement."

In *Youngblood v. Norton*, 1 *Strob. Eq.*, 122, the language above quoted from *McCaw v. Blewit* is quoted with approval,

and it was held that the advancement must be charged at what the property *was worth at the time of the death* of the intestate, although the father and son had agreed upon a higher valuation at the time the property went into the possession of the son.

The same rule was announced and acted upon in *Ison* v. *Ison*, 5 *Rich. Eq.*, 15, the language of the court being: "Certainly, in ascertaining the amount of this advancement, reference should be had to the description of the horse at the time of the gift, and the value of a horse of that description *at the death* of the intestate." So in *Manning* v. *Manning*, 12 *Rich. Eq.*, at page 428, it is said: "The period for fixing the rights of the parties is the death of the decedent. The value of the property to be divided is to be estimated as of that day, and so of the property which had been given off to the children, taking that property in the plight and condition it was when received by the children." The same rule was recognized and acted upon in *Rickenbacker* v. *Zimmerman*, 10 *S. C.*, 110.

So we think it clear, that the position contended for cannot be sustained, but, on the contrary, that the well-settled rule is, in ascertaining the amount at which an advancement should be charged, to inquire what is the value of the property at the time of the death of the intestate; what would it *then* bring, assuming it to be in the condition in which it was at the time of the gift?

Again, it is contended by another of the counsel that although slaves were not property at the time of the death and therefore then had no value, yet as the rule requires that reference should be had to the condition of the property at the time of the gift, and as the slaves, in this case, were then property and had a value, the estimate must be made as if their then condition as property still continued and as if they were still property, having a value. But this is manifestly impossible. Any estimate placed upon what would be their value in 1873, if they had continued to be property, would be purely conjectural, for there would be no standard by which such an estimate could be made. The law deals only with facts susceptible of proof by competent evidence, and courts cannot undertake to apply its principles to purely conjectural cases.

We are not insensible to the fact that these views will, in some

cases, and perhaps in this, lead to injustice, but as has been well said by Lesesne, Ch., in *Manning* v. *Manning, supra*: "While it is especially the province of this court to do complete justice, it must not lose sight of settled principles, and cannot obviate or remedy the mischances incident to human affairs." It would not only be dangerous to the best interests of society for courts to depart from or disregard settled principles of law, but they have no authority so to do. Courts administer justice according to law, and not according to what a judge may think is abstract justice in a particular case.

The second question, as to whether the value of the services of the slaves or their hire, should not be charged as advancements, was expressly reserved in the case of *Hughey* v. *Eicnelberger, supra*, and no opinion upon it was there intimated. We think, both on principle and authority, that this question must be answered in the negative. If the slaves were given to the children, then, of course, they became the property of the children from the time of the gift, and there would be no more propriety in holding them accountable for hire, than there would be in charging them with the hire of any other slaves which had become their property either by purchase or otherwise. After the slaves were given to the children their hire constituted no part of the intestate's estate, but belonged exclusively to the children, and could not, therefore, be considered as advancements. If, on the other hand, the slaves were not given to the children by the intestate, but simply loaned to them for use, then under the authority of the case of *Ison* v. *Ison*, 5 *Rich. Eq.*, 15, it is clear that the value of such use cannot be charged as an advancement.

In that case one of the questions was whether certain distributees who had been permitted by the intestate to use and occupy portions of his land, should be charged with the rent as advancements. The court held that they were not so chargeable, saying: "If they owed him for the rent, it was a debt. If he charged nothing for the occupancy (as was the fact), the permission to occupy was a mere accommodation, and no advancement. An advancement always embraces the idea that the parent has parted from his title in the subject advanced. But if the intestate, in this instance, had actually given the land, the statute express-

ly exempts the donee from accountability for the rent; much more are the parties exempt where the whole matter was simply permissive, and the object was mere accommodation."

We can see no reason why the principle, thus established as to rent of land, does not apply with equal force to the hire of slaves. If, however, the transaction between the intestate and his sons-in-law, by which he took notes from them for nominal sums, be regarded as a hiring by him to them, then it is quite clear that there would be no ground whatever for charging such hire to the daughters as advancements. It seems to us, therefore, that in no view of the case can the value of the slaves or their hire be charged as advancements.

The judgment of this court is that the judgment of the Circuit Court, allowing the value of the hire of certain slaves to be charged as advancements to certain of the children of intestate, be reversed, and that the case be remanded to that court for such further proceedings as may be necessary.